**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | | |
|---|---|---|
| RICHARD SIKES and KATHY SIKES, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | CV 111-042 |
| v. | * | |
| | * | |
| ALLEN L. SLOAN, M.D. and CSRA PAIN MANAGEMENT, LLC, | * | |
| | * | |
| Defendants. | * | |

---

**O R D E R**

---

Presently pending before the Court is Allen L. Sloan, M.D. and CSRA Pain Management, LLC's (collectively "Defendants") motion to dismiss.  (Doc. no. 10.)  For the reasons set forth below, Defendants' motion is **DENIED WITH LEAVE TO RENEW.**

## I. BACKGROUND

### A.    Factual Background

This case arises from injuries sustained by Richard Sikes as a result of the development of an inflammatory mass on the left side of his spinal cord.   Richard and Kathy Sikes (collectively "Plaintiffs") are married and reside in Richmond County, Georgia.  (Compl. ¶ 1.)  Defendant Sloan is a physician residing in South Carolina who is licensed to practice medicine

in both Georgia and South Carolina.  (Id. ¶ 3.)  Defendant CSRA Pain Management, LLC is a limited liability company chartered under the laws of the state of South Carolina, with its principal place of business in North Augusta, South Carolina. (Id. ¶ 4.)  Defendant Sloan is an officer and an employee of Defendant CSRA Pain Management, LLC.  (Id.)

In 2003, as a result of chronic pain, Richard Sikes ("Sikes") was prescribed a Medtronic pain infusion pump.  (Id. ¶ 9.)  On June 2, 2003, Sikes underwent surgery during which he was implanted with a SynchroMed Pump.  (Sloan Aff. ¶ 4.) Following the surgery, he asked Defendant Sloan to manage his treatment.  (Id.)  Sikes began his treatment with Defendant Sloan at Pain Management Consultants of Augusta ("Pain Management") located in Augusta, Georgia.  (Id.)  He received treatment at that location until February 25, 2004, at which time Defendant Sloan closed the Augusta practice.  (Id. ¶¶ 5, 6.)  Subsequent to the closing of Pain Management, Sikes received treatment with Defendant Sloan at Defendant CSRA Pain Management, LLC in North Augusta, South Carolina.  (Id. ¶ 8.) Defendant Sloan continued to treat Sikes at his North Augusta office until July of 2011.  (Id. ¶ 9.)

On June 26, 2006, the FDA ordered a Class 1 recall of Medtronic Infusion Pumps after determining that the Catheter Access Port on the pumps could detach from the main body of the

pump and interrupt drug flow. (Compl. ¶ 10.) Plaintiffs allege that despite being aware of this recall, Defendant Sloan did not inform them of it or of the risks associated with the infusion pump. (Id.) A similar recall was issued in August of 2007, and Plaintiffs allege that Defendant Sloan failed to provide them with any information relating to this second recall. (Id. ¶ 12.)

In January of 2008, a document entitled "Urgent: Medical Device Correction" was sent from Medtronic to healthcare professionals. (Id. ¶ 14.) This notice provided updated information pertaining to the possible development of inflammatory masses at or near the distal tip of intrathecal catheters. (Id.) The document included a section entitled "Recommendations for Patient Management" which stated, in part, that "[d]iligent patient management and increased awareness of inflammatory mass symptoms may reduce the incident of inflammatory mass or its sequelae." (Id.) This notice applied to the SynchroMed Pump implanted in Sikes as it contained an intrathecal catheter. (Id. ¶ 15.) Plaintiffs allege that Defendant Sloan received the notice and thus had an obligation to inform them of its existence. (Id. ¶¶ 15, 17, 18.) Plaintiffs further allege that Defendant Sloan did not follow the notice's recommendations for treating patients with infusion pumps. (Id. ¶ 24.) They claim that Defendant Sloan did not

3.

properly monitor Sikes in accordance with the notice and thereby did not detect the symptoms of an inflammatory mass.  (Id.)

In early 2009, Sikes began having difficulties walking because of weakness and numbness in his left leg. (Sikes Aff. ¶ 5.) He experienced increased burning sensations in his leg and increased pain in the middle of his back near the catheter tip. (Id.) He also found it necessary to use his urinary catheter more regularly. (Id.) During this time, Sikes' dosages of pain medication were repeatedly increased, but the increase had little if any effect. (Id.) He reported his increased pain to Defendant Sloan who responded that Sikes' symptoms were normal given the condition of his back. (Id.)

On April 3, 2009, Sikes fell and landed on his left side. (Compl. ¶ 33.) A few days later, he saw his primary care physician who, among other things, ordered X-rays. (Id.) The X-rays revealed two fractured ribs and a fracture of the vertebrae. (Id.) On July 2, 2009, Plaintiff was evaluated at University Hospital in Augusta, Georgia where a doctor performed a thoracic and lumbar MRI. (Id. ¶ 34.) The thoracic MRI revealed an intramedullary lesion predominantly at the T8 level. (Id.) As a result, Sikes underwent spinal surgery, during which doctors removed the catheter tip of his infusion pump. (Id.) Additionally, doctors removed inflammatory mass material that had grown into the left side of Sikes' spinal cord. (Id.)

4

Plaintiffs allege that as a result of the inflammatory mass, Sikes suffered permanent paralysis of his lower body. (Id. ¶ 35.)

## B.   Procedural Background

On March 29, 2011, Plaintiffs filed suit in diversity against Defendants Sloan and CSRA Pain Management, LLC as well as Medtronic, Inc., the manufacturer of the infusion pump at issue.[1]   (Doc. no. 1.)   They asserted a negligence claim against Defendants and alleged that Defendants acted willfully and wantonly by ignoring information regarding the dangers of the infusion pumps. (Compl. ¶¶ 52-58.)   Plaintiffs claim that they are entitled to punitive damages, expenses of litigation, past and future general damages, special damages, and past and future loss of consortium. (Id. ¶¶ 59-65.)   Plaintiffs allege in their Complaint that the Court has personal jurisdiction over Defendants because Defendant Sloan "has admission privileges at Walton Rehab Institute/Hospital, located in Augusta, Georgia" and "does business in Georgia and within this district and derives revenue from such business." (Id. ¶ 3.)   Moreover, Plaintiffs contend that venue is proper because "a substantial part of the events or omissions giving rise to the claim occurred in this District." (Id. ¶ 6.)

---

[1]   On February 9, 2012, Medtronic, Inc. was dismissed with prejudice from this action. (Doc. no. 56.)

5

On August 10, 2011, Defendants filed the present motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6). They claim that the case should be dismissed because (1) the Court lacks personal jurisdiction over them, (2) the Southern District of Georgia is an improper venue for this action, and (3) Plaintiffs did not comply with the statutory requirements of O.C.G.A. § 9-11-9.1.

## II. LEGAL STANDARD

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). The plaintiff establishes a prima facie case by presenting "substantial evidence  . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. . . ." Walker v. Nations Bank of Florida, 53 F.3d 1548, 1554 (11th Cir. 1995). The facts presented in the plaintiff's complaint are taken as true to the extent they are uncontroverted. Foxworthy v. Custom Trees, Inc., 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995). If, however, the defendant submits affidavits challenging the allegations in the complaint, the burden shifts back to the

6

plaintiff to produce evidence supporting jurisdiction. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010). If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. Id. (citing Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).

## III. DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants contend that they are not subject to personal jurisdiction in Georgia because they do not transact business in the state, derive revenue from the state, or engage in any other persistent course of conduct in the state. (Sloan Aff. ¶¶ 14, 15, 16, 17.) Plaintiffs, on the other hand, contend that Defendant Sloan is subject to personal jurisdiction in Georgia because (1) he is licensed to practice medicine in the state, (2) he called in prescriptions to Georgia pharmacies, and (3) he conducts business in Georgia through Allen L. Sloan, M.D., P.C.[2]

---

[2] Plaintiffs also set forth numerous other contacts that are not relevant to the personal jurisdiction issue. These contacts include: (1) Defendant Sloan attended medical school in Georgia; (2) Defendant Sloan practices under the name "CSRA" which is an area that includes thirteen Georgia counties; and (3) Defendant Sloan was disciplined by the Georgia Composite State Board of Medical Examiners and accepted the terms of probation issued against him.

Additionally, several of the contacts occurred after Sikes suffered his injuries. The minimum contacts analysis focuses on the relationship between Defendants and the forum state prior to the event in question. Therefore any

Plaintiffs further assert that Defendant CSRA Pain Management is subject to personal jurisdiction because (1) it solicits business in Georgia, and (2) Defendant Sloan's Georgia contacts may be imputed to Defendant CSRA Pain Management through an agency or alter ego theory. In their response, Plaintiffs also seek jurisdictional discovery to ascertain the full nature of Defendants' contacts with the state of Georgia.

### 1. Personal Jurisdiction Over Defendant Allen Sloan

To determine whether a nonresident defendant is subject to personal jurisdiction in Georgia, the Court must perform a two-part analysis. Diamond Crystal Brands, Inc., 593 F.3d at 1257-58. First, the Court must decide whether the exercise of personal jurisdiction is proper under Georgia's long-arm statute. Id. Next, the Court must determine whether there are sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. Id.; Int'l Shoe Co. v. Washington Office of Unemployment Comp. & Placement, 326 U.S. 310 (1945).

The Eleventh Circuit has held that "the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process," but instead

---

subsequent contacts will not support the exercise of personal jurisdiction. Thus, the Court did not consider that (1) Defendant Sloan directed medical personnel at University Hospital as to what to look for in the testing and evaluation of his patient and (2) Defendant Sloan directed medical personnel at University Hospital as to what to do with reports and records for his patient's continuing care in Georgia. Therefore, Plaintiffs should not focus on these contacts during jurisdictional discovery.

"imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Diamond Crystal Brands, Inc., 593 F.3d at 1259. "[C]ourts must apply the specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." Id. at 1263.

Georgia's long-arm statute permits the Court to exercise personal jurisdiction over a nonresident who (1) transacts any business within Georgia; (2) commits a tortious act or omission within Georgia, with an exception for defamation; or (3) commits a tortious injury in this state caused by an act or omission outside of Georgia, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state. O.C.G.A. § 9-10-91.

Based on the evidence before the Court, Plaintiffs may be able to establish a prima facie case of personal jurisdiction over Defendants pursuant to subsection (3) of the long-arm statute. Plaintiffs presented evidence that Sikes' neurological symptoms manifested in Georgia and that he underwent surgery in Georgia. Therefore, the first provision of subsection (3) is

9

satisfied as Defendants allegedly caused a tortious injury in Georgia.

However, the closer question involves whether Defendant Sloan regularly does or solicits business in Georgia. Defendants argue that Defendant Sloan has not engaged in any business in Georgia since the closing of Pain Management in 2004. However, Plaintiffs presented evidence that Defendant Sloan operates Allen. L. Sloan, M.D., P.C., a professional corporation located in Augusta, Georgia. (Pl.'s Ex. 2.) According to the Georgia Secretary of State, Allen L. Sloan, M.D., P.C. is a professional corporation authorized to business in Georgia. (Id.) Moreover, Defendant Sloan is listed as both the Chief Executive Officer and Chief Financial Officer of the professional corporation. (Id.)

At this time, the Court believes that jurisdictional discovery is appropriate in order to determine the full extent of the relationship between Allen L. Sloan, M.D., P.C. and Defendant Sloan. If Defendant Sloan was actively practicing medicine in Georgia, it is possible that Plaintiffs can establish that Defendant Sloan is subject to personal jurisdiction under subsection (3) of the long-arm statute.

Moreover, the fact that Defendant Sloan is licensed to practice medicine in Georgia may be sufficient to satisfy the Due Process requirements. To satisfy the constitutional minimum

contacts analysis, Plaintiffs must demonstrate that Defendant Sloan "purposefully availed" himself of the protection and laws of the state of Georgia, such that he "should reasonably anticipate being haled into court" here.   Diamond Crystal Brands, 593 F.3d at 1267.   Based on his Georgia license, Plaintiffs may be able to establish that Defendant Sloan purposefully availed himself of the laws of Georgia and could anticipate being haled into court here.

> 2.   Personal Jurisdiction Over Defendant CSRA Pain Management

Unlike Defendant Sloan, Defendant CSRA Pain Management has never transacted business in Georgia.   Defendant CSRA Pain Management is also not licensed to do business in Georgia and does not have any agents or employees in Georgia.   However, the contacts of another defendant may be imputed to a nonresident defendant for purposes of exercising personal jurisdiction. First, forum-state contacts of an agent may be imputed to the principal.   Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1362 (11th Cir. 2006).   Second, in some cases, personal jurisdiction will exist over affiliated parties, whether a parent or another related subsidiary, when the resident corporation acts on behalf of the nonresident affiliates.   Meier, 288 F.3d 1264, 273 (11th Cir. 2002). Plaintiffs presented evidence that Allen L. Sloan, M.D., P.C. and CSRA Pain Management, LLC may be related entities.   Based on

11

the filings on record with the Georgia Secretary of State, it appears that the principal office for Allen L. Sloan, M.D., P.C. is the same location as the principal office of CSRA Pain Management.   Therefore, if the two entities act as one, and Defendant Sloan serves as an agent for both, it is possible that the contacts of Allen L. Sloan, M.D., P.C. may be imputed to CSRA Pain Management.   However, the Court cannot make such a determination until the parties conduct limited discovery and re-brief the issue.[3]

### B.   Jurisdictional Discovery

As noted above, Plaintiffs have requested, and are entitled to, limited jurisdictional discovery.   It is well-accepted that a qualified right to jurisdictional discovery exists.   See Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 729-31 (11th Cir. 1982). Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ."   Discovery is not limited to the merits of a case, as it is available to ascertain the facts bearing on issues such as jurisdiction or venue.   See Oppenheimer Funds, Inc. v. Sanders, 437   U.S.   340,   351   n.13   (1978).   Courts   should   permit jurisdictional discovery unless the plaintiff's jurisdictional claims are clearly frivolous.   Toys "R" Us, Inc. v. Step Two,

---

[3]   In order to satisfy the requirements of specific jurisdiction, Plaintiffs must also produce evidence establishing that the acts giving rise to this lawsuit arose out of Defendants' contacts with the state of Georgia.

S.A., 318 F.3d 446, 456 (3d. Cir. 2003.)  Indeed, the plaintiff has a right to jurisdictional discovery when the plaintiff alleges sufficient facts to suggest with "reasonable particularity" the possible existence of the requisite contacts between the defendant and the forum state.  Id.

Here, Plaintiffs made the required showing.  They demonstrated a possible relationship between Allen L. Sloan, M.D., P.C. and CSRA Pain Management that would justify imputing the Georgia contacts of Allen L. Sloan, M.D., P.C. to CSRA Pain Management.  Therefore, Plaintiffs are entitled to limited jurisdictional discovery into the relationship between Allen L. Sloan, M.D., P.C., Defendant CSRA Pain Management LLC, and Defendant Sloan.  Moreover, Plaintiffs suggested that Defendants directly solicit business in Georgia and derive revenue from Georgia residents.  Therefore, they are also entitled to limited jurisdictional discovery into the business relationships of Defendants with the state of Georgia, including the advertising history of Defendants and the revenue garnered from Georgia residents.

### III. CONCLUSION

Based on the foregoing, Defendants' motion to dismiss pursuant to Rule 12(b) (doc. no. 10) is **DENIED WITH LEAVE TO RENEW** at the close of jurisdictional discovery.  The parties

13

shall have **forty-five (45) days** from the date of this Order to conduct jurisdictional discovery. The Court notes that discovery is limited to the relationship between Allen L. Sloan, M.D., P.C., Defendant CSRA Pain Management LLC, and Defendant Sloan, as well as the business relationships of Defendants with the state of Georgia, including the advertising history of Defendants. Defendants may renew their motion to dismiss within **twenty-one (21) days** after the close of jurisdictional discovery. Should Defendants decide to renew their motion, the Court will consider their 12(b)(3) and 12(b)(6) arguments along with their 12(b)(2) argument.[4]

   **ORDER ENTERED** at Augusta, Georgia this $\underline{28^{th}}$ day of March, 2012.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[4] In their Complaint (doc. no. 1), Plaintiffs identified § 1332 diversity as the basis for this Court's subject matter jurisdiction over the case. (Id. ¶ 6.) However, because Defendant CSRA Pain Management is a limited liability company, it "is a citizen of any state of which a member of the company is a citizen." Rolling Greens MHP, LP v. Comcast SCH Holdings, LLC, 374 F.3d 1020, 1022 (11th Cir. 2004). Plaintiffs, therefore, must make a further showing to the Court that the individual members of CSRA Pain Management were diverse, i.e., not citizens of Georgia, at the time the Complaint was initially filed.